**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| JAIME SHARP | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | 2:21-CV-117-RWS-JCF |
| | : | |
| | : | |
| PICA-HILTON, LLC | : | |
| (d/b/a 'cue Barbecue) | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**COMPLAINT**

Plaintiff Jaime Sharp files her Complaint against Defendant
Pica-Hilton, LLC (d/b/a 'cue Barbecue) ("Company" or "Cue Barbecue").

**NATURE OF THE ACTION**

1.

This is an action for discrimination, retaliation, and failure to
accommodate under the Americans with Disabilities Act of 1990, as
amended, 42 U.S. §§ 12101 *et seq*. (ADA), Title VII of the Civil Rights
Act of 1964, as amended by the Pregnancy Discrimination Act of 1978,
42 U.S.C. §2000e *et seq*, (ADA), the Families First Coronavirus

Response Act., Public Law 116-127 ("FFCRA"), and Emergency Paid

Sick Leave Act, 29 U.S.C. § 2601 ("EPSLA")

## PARTIES

### 2.

Plaintiff Jamie Sharp is a U.S. citizen and resident of Forsyth

County in the State of Georgia.

### 3.

Defendant Pica-Hilton, LLC is a limited liability corporation

organized under the laws of Georgia with its principal office address at

1370 Buford Highway, Ste. 101, Cumming, Georgia, 30041 in Forsyth

County. Pica-Hilton operates a Barbeque restaurant named 'cue

Barbeque at that same address. Pica-Hilton is subject to an action

under the ADA, the Pregnancy Discrimination Act, and the Families

First Coronavirus Response Act, and can be serve with summons and

complaint upon its Registered Agent: Layne Kamsler, 178 S. Main

Street, Suite 250, Alpharetta, Georgia, 30009.

## JURISDICTION AND VENUE

4.

The claims brought in this lawsuit present federal questions and jurisdiction in this Court The claims brought in this lawsuit present federal questions and jurisdiction in this court is proper under 28 U.S.C. §§'s 1331, 1337, 1343, and 1367.

5.

Venue of this suit is proper in the Northern District of Georgia, Gainesville Division under 28 U.S.C. § 1391. Defendant principal office address is in this division, so it resides within this division. The alleged unlawful acts against Plaintiff also occurred in this judicial district and division. In addition, Defendant operates in this judicial district and division.

6.

Sharp filed a charge against Defendant with the Equal Employment Opportunity Commission on May 5, 2020. The Notice of Right to Sue states that it was mailed on or about February 23, 2021, but Plaintiff did not receive it until March 2, 2021.

## FACTUAL ALLEGATIONS

7.

Defendant hired Sharp as a server at or around July 15, 2019.

8.

Sharp suffered from asthma that caused her to miss work on occasion due to illnesses caused by her asthma (pleurisy and bronchitis).

9.

Sharp advised General Manager Brad Fyle of her asthma condition and told him that it was the reason for her absences. The last such absence before March 2020 was at or around January 2020.

10.

On February 29, 2020, Sharp advised Fyle that she was pregnant.

11.

Because she had experienced a stroke on May 5, 2017, Sharp's pregnancy was considered high risk.

12.

Sharp continued to work through March 16. 2020 and was not scheduled to work again until March 21, 2020 due to COVID-19 concerns related to her asthma and high-risk pregnancy.

13.

On March 20, 2020, Sharp informed Fyle that her doctor informed her that she must avoid working at the restaurant because her pre-existing disabilities presented a high risk to her pregnancy, particularly during the COVID-19 pandemic.

14.

Sharp then provided Fyle with a doctor's note that stated she "has medical conditions that increase the risk of respiratory infections - limit contact with public."

15.

Fyle removed Sharp from the work schedule as an accommodation for one week.

16.

On March 21, 2020, per a state order to halt dine-in services due to the COVID-19 pandemic, the Defendant partially closed and only provided service for pick-up orders.

17.

Fyle never informed Sharp that he believed that he needed her doctor to provide more information or clarification of the note. Without seeking consent from Sharp, Fyle claims that he contacted her doctor's "office" to

inquire about the note and alleges that he was told she could still work if her contact with the public was "limited."

18.

On March 24, 2020, Sharp contacted her doctor's office and they denied providing any information to Fyle without her consent.

19.

On that same day, Sharp informed Fyle that she had filed for unemployment benefits because of the reduction in hours she was experiencing as a result of the pandemic.

20.

On March 25, 2020, Fyle informed Sharp that she had been placed back on the work schedule and must report to work on March 26, 2020 at 11:00 a.m. for curbside service training.

21.

Sharp informed Fyle that she must "shelter in place" due to her medical condition, her doctor's instructions, and an executive order issued by the Governor Brian Kemp on March 23, 2020.

22.

On March 26, 2020, at 10:35 a.m., one of Defendant's members, Chris Hilton, informed Sharp that she could either start her shift at 11:00 AM or she could provide another doctor's note saying she was unable to work.

23.

Sharp informed Hilton that she would not be able to attend work due to the shelter in place order and her doctor's orders.

24.

Sharp also informed Hilton that she could not obtain a doctor's note that same day.

25.

Neither Fyle nor Hilton communicated anything to Sharp regarding her employment status.

26.

On April 1, 2020, Sharp sent Hilton and Fyle an E-mail requesting paid and unpaid leave under the Families First Coronavirus Response Act (FFRCA).

27.

Sharp attached another doctor's note to the E-mail that stated that Sharp must shelter in place due to an increased risk of pregnancy complications due to the coronavirus.

28.

When she heard nothing back, Sharp sent a follow-up email to Hilton and Fyle on April 4, 2020.

29.

Sharp sent a follow up text message to Fyle on April 9, 2020.

30.

When the Defendant failed to respond to Sharp, she obtained an attorney who asserted her rights under the ADA, PDA, and FFRCA on her behalf in an April 15, 2020 letter to Hilton.

31.

Defendant's CEO and member Gene Pica responded on April 30, 2020 that the restaurant had terminated Sharp on March 26, 2020 when she did not provide a doctor's note by 11:00 a.m. that same day.

32.

Pica also refused to grant her the paid leave required under the FFRCA unless she signed a release of all liability and claims.

33.

Before its response to her attorney on April 30, 2020, Defendant had never notified Sharp that she had been terminated or issued her a Separation Notice.

34.

In fact, Defendant told other employees that Sharp had quit.

35.

Defendant never filed unemployment with the Georgia Department of Labor on Sharp's behalf according to the Department of Labor rules they had been made aware of.

36.

Instead, when Sharp filed for unemployment benefits, Defendant informed the Georgia Department of Labor that Sharp had quit.

37.

Defendant's discriminatory and retaliatory acts have caused Plaintiff emotional distress and financial hardship.

## COUNT ONE
## DISCRIMINATION UNDER THE ADA

38.

Plaintiff's stroke and the conditions that followed it were physical impairments that substantially limited her in the major life activities of communicating and performing manual tasks or other physical acts requiring physical coordination when active.

39.

This condition also limited her neurological, brain, and circulatory bodily functions.

40.

Sharp suffered a brain bleed during her stroke.

41.

Sharp was hospitalized for five days of observation and treatment following her stroke.

42.

Plaintiff was placed on an anti-seizure medication after her stroke until a neurologist discontinued its use.

43.

Plaintiff suffered severe headaches for a long period after her stroke.

44.

In addition, Plaintiff suffers from asthma.

45.

Plaintiff's asthma is a disability because it is a physical impairment that substantially limited her in the major life activity of breathing when active. Plaintiff's asthma also limited her respiratory bodily function.

46.

Plaintiff's asthma has caused her to miss work on several occasions due to it causing Plaintiff respiratory problems and asthma related illnesses (pleurisy and bronchitis).

47.

On March 18, 2020, the U.S. Centers for Disease Control and Prevention (CDC) acknowledged that people with asthma face greater risk of serious illness from COVID-19.

48.

Because of her stroke and asthma, Plaintiff has a record of having a disability.

49.

Defendant regarded Plaintiff as disabled because of her prior stroke, her high-risk pregnancy, her asthma, and her inability to attend work during her pregnancy and the pandemic.

50.

Defendant discriminated against Plaintiff by terminating her because she suffered from a disability, had a record of a disability, and it regarded her as disabled under the ADA.

51.

As a result of Defendants' discriminatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT TWO**
**FAILURE TO ACCOMMODATE UNDER THE ADA**

52.

Defendants violated the ADA by failing to grant Plaintiff a reasonable accommodation of leave due to her high-risk pregnancy and the shelter in place order.

53.

Defendants cannot show that it would have been an undue burden to allow Plaintiff to take leave and then place her back in a position or another similar position once the risk due to her pregnancy was over.

54.

Rather than accommodate Plaintiff by allowing her leave, Defendants terminated Plaintiff.

55.

As a result of Defendants' failure to accommodate, Plaintiff is entitled to recover the relief requested below.

## COUNT THREE
## RETALIATION UNDER THE ADA

56.

Plaintiff sought accommodation under the ADA by requesting leave during her high-risk pregnancy and the shelter in place order.

57.

Rather than grant such leave, Defendant terminated Plaintiff.

58.

Plaintiff's attorney also asserted that Defendant was violating the ADA and threatened to file an EEOC Charge.

59.

Defendant further retaliated against Plaintiff for her protected activity by failing to file for unemployment benefits on her behalf as Sharp had informed them was required by law.

60.

Defendant also retaliated against Sharp for engaging in protected activity by opposing her unemployment benefits claim by falsely alleging that she had quit her job.

61.

As a result of Defendant's retaliation, Sharp is entitled to recover the relief requested below.

## COUNT FOUR
## DISCRIMINATION UNDER THE PREGNANCY DISCRIMINATION ACT

62.

Plaintiff sought leave as an accommodation because of her high-risk pregnancy and the shelter in place order.

63.

Rather than grant Plaintiff this leave, which it had granted to other non-pregnant individuals with medical issues, Defendant terminated Plaintiff in violation of the PDA and Title VII.

64.

As a result of Defendant City's discriminatory acts, Plaintiff is entitled to recover the relief requested below.

## COUNT FOUR
## RETALIATION UNDER THE PREGNANCY DISCRIMINATION ACT

65.

Plaintiff sought leave as an accommodation because of her high-risk pregnancy and the shelter in place order.

66.

Plaintiff engaged in protected activity by requesting accommodation for her high-risk pregnancy.

67.

Defendant terminated Plaintiff for engaging in this protected activity under the PDA and Title VII.

68.

Plaintiff asserted pregnancy discrimination under the PDA and Title VII through her attorney's letter and in filing an EEOC Charge.

69.

Defendant retaliated against Plaintiff for engaging in this protected activity by requiring that she sign a release before obtaining any FFRCA payment.

70.

As a result of Defendant City's retaliatory acts, Plaintiff is entitled to recover the relief requested below.

**COUNT FIVE**
**FAILURE TO PAY BENEFITS UNDER THE FFRCA**

71.

As detailed above, Plaintiff informed Defendant that she was unable to attend work due to being subject to a shelter in place order issued by the State of Georgia and being advised by her health care provider to self-quarantine.

72.

The FFRCA and EPSLA provide that an employee should be paid two weeks of paid sick leave when they are unable to work because of a state isolation order related to COVID-19 or advised by a health care provider due to concerns related to COVID-19.

73.

Rather than pay Plaintiff for these two weeks, Defendant terminated Plaintiff to avoid making the required payment.

74.

As a result of Defendant City's violation of the FFRCA and EPSLA, Plaintiff is entitled to recover the relief requested below.

**COUNT SIX**
**RETALIATION UNDER THE FFRCA**

75.

Plaintiff asserted her rights under the FFRCA and EPSLA to leave and to be paid for two weeks.

76.

In order to avoid paying this two-weeks of pay, Defendant feigned that it terminated Plaintiff before the effective date of the FFRCA.

77.

Defendant retaliated against Plaintiff for asserting rights under the FFRCA by terminating her, failing to pay her benefits under the FFRCA and EPSLA, conditioning those benefits on her signing a release of all claims, not filing for unemployment benefits for employees unable to work due to the pandemic, and in opposing her unemployment benefits by giving a false reason to the Georgia Department of Labor.

78.

As a result of Defendant's retaliation, Plaintiff is entitled to recover the relief requested below.

## COUNT SEVEN
## INTERFERENCE WITH FFRCA RIGHTS

79.

Plaintiff had rights under the FFRCA to leave and to be paid for two weeks.

80.

In order to avoid paying this two-weeks pay and leave, Defendant feigned that it terminated Plaintiff before the effective date of the FFRCA.

81.

Defendant interfered with Plaintiff's FFRCA rights by terminating her, failing to pay her benefits under the FFRCA and EPSLA, and failing to provide her any leave under the FFRCA.

82.

As a result of Defendant's interference, Plaintiff is entitled to recover the relief requested below.

WHEREFORE, Plaintiff prays:

a.   That Summons issue requiring Defendant to answer the Complaint within the time provided by law;

b.   That Plaintiff be awarded a declaratory judgment that Defendant violated the ADA, the PDA (Title VII), and FFRCA;

c.   That Plaintiff recover from Defendant back pay and benefits with pre-judgment interest;

d.   That Plaintiff recover liquidated damages against Defendant;

e.   That Plaintiff recover compensatory damages against Defendant in an amount to be determined by a jury;

f.   That Plaintiff recover punitive damages against Defendant in an amount to be determined by a jury;

g.      That Plaintiff recover attorney's fees and costs of litigation under the

ADA, PDA (Title VII), and FFRCA, and other applicable federal law;

h.      That the Court award Plaintiff any other or further relief as it deems

necessary and proper, or equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Respectfully submitted this 25th day of May, 2021.

T. Robert Reid, LLC

s/ Tilden Robert Reid, II
T. Robert Reid
Ga. Bar No. 600138

1030 Woodstock Road
Suite 3112
Roswell, Georgia  30075
Telephone (678) 743-1064
Facsimile (404) 549-4136
robreidattorney@gmail.com

Attorney for Plaintiff